IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **HEMISPHERE MANAGEMENT, LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**COMPUTEREASE SOFTWARE, INC.**<br><br>Defendant . | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No.  2:06CV337DAK |

This matter is before the court on Defendant ComputerEase Software, Inc.'s ("ComputerEase") Motion to Dismiss for Lack of Personal Jurisdiction.  A hearing on the motion was held on October 12, 2006.  At the hearing, ComputerEase was represented by David Slaughter and Richard Meyer and Hemisphere Management, LLC ("Hemisphere") was represented by Russell Fericks and Ramona Garcia.  The court took the matter under advisement. The court has considered carefully the memoranda and affidavits submitted by the parties as well as the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Hemisphere Management, LLC is a Utah Limited Liability Company. Defendant ComputerEase Software, Inc. is an Ohio Corporation. Plaintiff, Hemisphere Management, LLC, and Defendant, ComputerEase Software, Inc., entered into a Distribution Agreement (the "Distribution Agreement") under which Hemisphere provided support to dealers

1

of ComputerEase's software in states west of the Mississippi River.

The Distribution Agreement is the subject matter of Plaintiff's complaint. Plaintiff has alleged four causes of action, all pertaining to ComputerEase's alleged breach of the Distribution Agreement. A second agreement (the "Dealer Agreement"), exists between ComputerEase and Hemisphere Corporation, another entity owned by Mr. Scott Lyon. Mr. Lyon is the sole officer and director of both Hemisphere Corporation and Hemisphere Management, LLC. Hemisphere Corporation, Hemisphere Management, LLC and ComputerEase Software Inc., are all parties to litigation proceeding in the Southern District of Ohio, Western Division (the "Ohio Litigation").

## DISCUSSION

ComputerEase brings the present motion to dismiss arguing that this court lacks both general and specific personal jurisdiction over it.

### I. Personal Jurisdiction

When a court's jurisdiction is contested on a motion to dismiss under Federal Rule of Civil Procedure 12(b), a plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998); *Systems Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp 2d. 1093, 1095 (D. Utah 2003). In the preliminary stages of litigation, the plaintiff bears the burden of establishing a prima facie case of jurisdiction. *Hafen v. Strebeck*, 338 F. Supp. 2d. 1257, 1260 (D. Utah 2004); *Electronic Realty Assoc. v. Vaughan*, 897 F. Supp. 521, 521 (D. Kansas 1995) (citing *McNutt v. General Motors*, 298 U.S. 178, 189 (1936)). The plaintiff's burden is light. *Vaughan*, 897 F.Supp. at 521. All factual disputes are resolved in favor of the plaintiff when determining the sufficiency of plaintiff's showing. *Purco Fleet Servs., Inc. v. Towers*, 38 F. Supp. 2d. 1320, 1322

(D. Utah 1999); *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995).

Where a defendant does not reside in Utah, this court may exercise personal jurisdiction over the defendant only if there are sufficient "minimum contacts" between the defendant and Utah, such that the defendant could "reasonably anticipate being haled into court" in Utah. *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir.2004) (citations omitted); *Bathcrest, Inc. v. Safeway Safety Step, Inc.,* 417 F. Supp. 2d 1236, 1239 (D. Utah 2006). The minimum contacts standard may be met in two ways.  First, where the defendant has "continuous and systematic general business contacts" with the forum state, courts in the forum state are permitted to exercise power over a defendant regardless of the subject of the claim asserted. *Arguello v. Indus. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992). Second, where the "defendant has 'purposefully directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that " 'arise out of or relate to' those activities." *Bell Helicopter Textron, Inc.*, 385 F.3d at 1296 (citations omitted).  The court will first address the issue of general jurisdiction, and will then address the issue of specific jurisdiction.

    A.    **General Personal Jurisdiction**

Courts consider a variety of factors in determining whether a defendant has the sort of continuous and systematic general business contacts upon which general personal jurisdiction may be found, including whether a defendant is:

> (1) engaged in business in this state; (2) licensed to do business in this state; (3) owning, leasing, or controlling property or assets in this state; (4) maintaining employees, offices, agents, or bank accounts in this state; (5) shareholders reside in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting business in this state; (8) traveling to this state by way of salespersons; (9) paying taxes in this state; (10) visiting potential customers in this state; (11) recruiting employees in the state; and (12)

generating a substantial percentage of its national sales through revenue generated from in-state customers.

*Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (quoting *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930-31 (Utah Ct. App.1998)). This court will examine defendant's contacts with Utah up through and including the time the complaint was filed. As stated in *Haas v. A.M. King Industries, Inc.,* 28 F. Supp. 2d 644, 648-649 (D. Utah 1998):

> As a matter of common sense consistent with the notion underlying the concept of general jurisdiction, courts usually consider the defendant's contacts for several years prior to the filing of the suit....In its effort to determine whether [the defendants] had continuous and systematic contacts with the state of Utah, the court will consider all of [the defendants'] contacts with the state of Utah up to and including the time this lawsuit was filed....

Plaintiff has submitted the Affidavit or Scott Lyon (the "Lyon Affidavit") to establish facts to support its arguments that general jurisdiction exists[1]:

1.  Hemisphere has performed as a distributor of ComputerEase's software products through offices located in Salt Lake County;

2.  Hemisphere has sold ComputerEase software to 167 Utah customers;

3.  ComputerEase paid royalties or commissions to Hemisphere;

4.  Until August 2004, Hemisphere processed and received all payments by dealers of ComputerEase software in the western United States;

5.  ComputerEase is interfering with Hemisphere's sale of its dealership customer base to a Utah company, and is therefore violating the Dealer Agreement;

---

[1]The parties agree that ComputerEase currently maintains an employee in the state of Utah; however, because this employee was hired after Hemisphere filed the present lawsuit this fact is not relevant to this court's assessment of defendant's contacts with the state of Utah during the time period up through and including the time the complaint was filed.

      6.      Sales, invoicing, and delivery of ComputerEase products are transacted via a computer server located in the State of Utah;

      7.      ComputerEase's President traveled to Salt Lake City in January 2004;

      8.      ComputerEase owns a server located in Salt Lake City; and

      9.      Sales literature, web pages designs and CDs are produced for ComputerEase in the state of Utah.

After considering the allegations plead by Hemisphere and the facts contained in the Lyon Affidavit in light of the factors listed in *Soma*, the court holds that ComputerEase does not have "continuous and systematic general business contacts" with Utah. Accordingly, this court cannot exercise general jurisdiction over ComputerEase.

At the time the complaint was filed, ComputerEase was not licensed to do business in this state; did not maintain employees, offices, agents, or bank accounts in this state; did not have shareholders residing in this state; did not maintain phone or fax listings within this state; did not generate a substantial percentage of its national sales through revenue generated from in-state customers; and did not pay taxes in this state. Further, many of the contacts with Utah asserted by Hemisphere in support of its arguments in favor of jurisdiction are actions taken by Hemisphere pursuant to Hemisphere's obligations under the Distributor Agreement. While the act of contracting with a Utah company may constitute a contact with Utah for jurisdictional purposes, this court is unwilling to impute to ComputerEase the actions taken by Hemisphere in performing Hemisphere's obligations under the Distributor Agreement. Accordingly, the court does not find persuasive Hemisphere's argument that ComputerEase is subject to this court's

jurisdiction because Hemisphere performed as a distributor[2] of ComputerEase's software products through offices located in Salt Lake County; or that up until August 2004 Hemisphere processed and received all payments by dealers of ComputerEase software in the western United States.

With regard to the sales of ComputerEase products to 167 Utah customers, the Lyon Affidavit makes clear that such customers are more accurately considered customers of Hemisphere, because Hemisphere is in the process of selling its customer base.  Further, the dispute raised in the Lyon Affidavit pertaining to the Dealer Agreement is not the subject of the dispute before this court.  While it is clear that ComputerEase benefitted from the sale of its product to 167 Utah customers, the fact that Hemisphere solicited the customers, and that Hemisphere has the ability to sell the customer base clearly attenuates ComputerEase's connection to these customers.  The remaining factors, including a single visit to Utah by John Meibers, payment of commissions under the Distributor Agreement, use of computer servers in Utah, and the production of promotional materials in Utah, when viewed in light of the foregoing discussion are insufficient to justify this court's exercise of general personal jurisdiction over ComputerEase.

---

[2]During oral argument counsel for Hemisphere referenced *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), to support Hemisphere's position.  The court assumes that counsel for Hemisphere was referring to section II-A of the opinion, which states: "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id*. at 111 (emphasis added).  The courts notes, that section II-A was not joined by a majority of justices, and further notes that the *Asahi* case is factually distinguishable from the present case.

B.     **Specific Personal Jurisdiction**

"[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.' " *National Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995) (citations omitted). Utah's long-arm statute provides, in pertinent, part as follows:

> Any person ... who in person or through an agent does any of the following enumerated acts, submits himself ... to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>   (1) the transaction of any business within this state;
>   (2) contracting to supply services or goods in this state;
>   (3) the causing of any injury within this state whether tortious or by breach of warranty...

Utah Code Ann. § 78-27-24(1)-(3) (2002 & Supp. 2003).

The phrase "transacting business" means activities of a non-resident person in this state which "affect persons or business within the state." *Id.* § 78-27-23(2) (2002). These words are liberally and expansively interpreted such that "a person may transact business within the state despite an absence of physical presence in Utah." *Nova Mud Corp. v. Flectcher*, 648 F. Supp. 1123, 1126 (D. Utah 1986). In fact, the entire Utah long-arm statute is intended to be interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78-27- 22; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999). Accordingly, the Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII*

*MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998). Therefore, the court will begin its analysis by determining whether the exercise of personal jurisdiction over Defendant under the facts of this case meets federal due process standards.

Under due process standards, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (citations omitted). The "minimum contacts" necessary for specific personal jurisdiction are established "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to those activities." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

This court has held that "[t]he nexus requirement is not met whenever there is a creation or breach of contract with a Utah plaintiff." *STV Intern. Marketing v. Cannondale Corp.,* 750 F.Supp. 1070 (D. Utah, 1990). In other words, "doing business with a company that does business in the forum state is not the same as doing business in that state and is insufficient to establish personal jurisdiction." *Bathcrest, Inc. v. Safeway Safety Step, Inc.*, 417 F. Supp. 2d 1236, 1242 (D. Utah 2006). In *Bathcrest,* the court analyzed a situation similar to the present case. In *Bathcrest,* Defendant Safeway entered into a licensing agreement with Defendant BCI. Under the terms of the agreement "BCI was solely responsible for promoting, marketing, distributing, and selling Safeway's products." *Id.* at 1242. Safeway had no offices, personnel, or other contact with the state of Utah except through the actions of BCI. *Id.* The *Bathcrest* court

held that it lacked jurisdiction over Safeway.

Similarly, the Tenth Circuit has concluded that "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). In determining purposeful availment, the court must "undertake a particularized inquiry" and examine "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.*

Turning now to the due process inquiry in this case, the court notes that the contract allegedly breached by ComputerEase does not require that ComputerEase conducts business in Utah. Instead, Hemisphere was responsible as a distributor to establish a network of dealers, and as a dealer was solely responsible for promoting distributing, and selling ComputerEase's products in Utah. In exchange for its efforts, Hemisphere received a portion of the revenue generated by sales of ComputerEase's products in Hemisphere's distribution area under the Distribution Agreement and a portion of the revenue generated by its sales under the Dealer Agreement. This arrangement is similar to the type of arrangement that existed between BCI and Safeway, as discussed in *Bathcrest*. In examining the course of dealing between the parties, the record is scarce. The few facts that are available indicate that the contract at issue was not negotiated or executed in Utah. As noted above, the court recognizes that contracting with a Utah company may constitute a contact with Utah for jurisdictional purposes; however, as also noted above, this fact alone is typically regarded as insufficient to justify the exercise of jurisdiction over an out-of-state defendant. The only jurisdiction contact advanced by

Hemisphere that is applicable to the causes of action in Hemisphere's complaint is that ComputerEase entered into a contract with Hemisphere, and Hemisphere alleges that ComputerEase has breached that contract. This single contact is insufficient to satisfy the "minimum contacts" requirement, and fails to satisfy the Plaintiff's burden of establishing a prima facie case that jurisdiction exists.

Based on the above reasoning, the court concludes that this court may not exercise specific jurisdiction over ComputerEase under due process standards and Utah's long-arm statute.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for lack of personal jurisdiction is GRANTED.

DATED this 16th day of November, 2006.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge